IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00955-WDM-BNB

TAVEESAK RUAMPANT,
SINEENAT RUAMPANT, and
TANIDA RUAMPANT,

    Plaintiffs,

v.

KERRY MOYNIHAN,
PETER VARGAS,
STEPHANIE HANSEN, and
ADAMS 12 SCHOOL DISTRICT, a Colorado School District,

    Defendants.

_____

**ORDER ON MOTION TO DISMISS**
_____

Miller, J.

This matter is before me on the motion to dismiss filed by Defendants Moynihan, Vargas, Hansen and Adams 12 School District.[1] Mot. to Dismiss, June 15, 2006, Docket No. 13.  Plaintiffs oppose the motion.  After a review of the Complaint and the parties' written arguments, I conclude oral argument is not required.  For the following reasons, the motion will be granted in part.

Background

The facts, as alleged by Plaintiffs in their Complaint, are summarized as follows.

---

[1] The claims against Dan Jimenez have been dismissed. Notice of Dismissal, July 24, 2006, Docket. No. 31.

Tana Ruampant was a student at Thornton Highschool.  Compl., May 22, 2006, Docket No. 1 at ¶ 11.  During the course of his junior year at that school, Tana on several occasions spoke with school counselors about his emotional difficulties and troubled relationship with his girlfriend.  *Id.* at ¶ 12.  School administrators had Tana and his girlfriend sign a contract stating that they would do nothing to endanger themselves.  *Id.* at ¶ 13.

During the following summer, Tana's girlfriend ended their relationship and Tana's emotional situation worsened.  *Id.* at ¶ 14-15.  During Tana's senior year, school administrators were notified that Tana had expressed suicidal thoughts on a webpage.  *Id.* at ¶ 16.  The parents of Tana's former girlfriend contacted the school and requested that the two be kept apart.  *Id.* at ¶ 18.  On September 13, 2004, Tana was called before "the counselor, the principal, the school police officer, and the dean of students," and ordered to stay away from the girl.  *Id.* at ¶ 19.  The parents of Tana's former girlfriend were notified about the meeting, and they requested that Tana's parents be notified as well.  However, at no point were the Ruampants notified about either this meeting or Tana's emotional troubles and suicidal thoughts.  *Id.* at ¶ 21.

On September 18, 2004 Tana attended the Thornton Highschool homecoming and, pursuant to the school's order issued five days earlier, did not make contact with his former girlfriend.  *Id.* at ¶ 22.  He returned home later that evening and made a posting on the internet stating that he had lost his girlfriend because of the school's "restraining order."  *Id.* at ¶ 23.  Early the next day, Tana committed suicide.  *Id.* at ¶ 24.

Plaintiff Tanida Ruampant is Tana's sister.  Plaintiffs Taveesak and Sineenat

Ruampant are Tana's parents. They bring this action seeking damages as a result of Tana's suicide.

## Standard of Review

Defendants have asked for the claims against them to be dismissed pursuant to FED. R. CIV. P. 12(b)(1) & (6).[2] Under Rule 12(b)(6) claims should be dismissed if it appears beyond a reasonable doubt that the Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the Plaintiffs. *Yoder v. Honeywell*, 104 F.3d 1215, 1224 (10th Cir. 1997).

## Discussion

### 1. 42. U.S.C. § 1983 Claims

This Court's jurisdiction is based upon Plaintiff's claims under 42 U.S.C. § 1983. Ultimately, Plaintiffs appear to assert separate claims for violation of parental rights and violation of civil rights under § 1983. Defendants argue these claims should be dismissed for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation,

---

[2] To the extent that some claims may be barred by the Colorado Governmental Immunity Act ("CGIA") C.R.S. § 24-10-101 et seq. (2005), the issue is jurisdictional and must be examined under rule 12(b)(1). Under 12(b)(1) "the court may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Fin., SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997).

> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proceeding in redress . . .

Section 1983 does not create a cause of action in itself, but rather allows plaintiffs access to court for alleged violations of federally protected rights by those acting under color of state law. In their Complaint, Plaintiffs do not cite to any particular federally protected right. *See* Compl. at 5. They do, however, state that Defendants "owed a duty to plaintiffs to inform them of defendants' actions and all other material facts relevant to [Tana's] well being." *Id.* Plaintiffs also assert that Defendants "made it materially more likely that [Tana] would take his life," "withheld from plaintiffs . . . information that was their right as parents to receive," and "failed to follow such district policies as might have afforded notice and information." *Id.* In their Brief in Opposition, Plaintiffs assert more specifically that these actions violate two allegedly federally protected substantive due process rights: a right to be free from injury and general "parental rights." Pls.' Opp'n Br. at 11-13. I will address each claim.

A. Right to be Free from Injury

Plaintiffs assert in their Brief in Opposition a claim for "violation of due process based on injury caused by a danger the defendants created or enhanced." Pls.' Opp'n Br. at 11. The standard for such a claim is laid out in *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253 (10th Cir. 1998). To support this claim, Plaintiffs must demonstrate that 1) the Defendants created the danger or increased the Plaintiffs'

vulnerability to the danger in some way; 2) Plaintiffs were a member of a limited and specifically definable group; 3) Defendants' conduct put Plaintiffs and other members of the group at substantial risk of serious, immediate and proximate harm; 4) the risk was known or obvious; 5) Defendants acted recklessly in conscious disregard of that risk; and 6) such conduct, when viewed in total, is conscience shocking. *Armijo* at 1262-63.

As to the first three elements, I note that Plaintiffs are bringing claims on their own behalf and are not suing on behalf of Tana Ruampant, or in his name as was the case in *Armijo*. As such, they are required to show that Defendants created or enhanced a danger to them, not to Tana. They also must show that they, as family members of a high school student, are members of a specifically definable group. Finally, they are required to show that the Defendants' conduct put them, not just Tana, at a substantial risk of serious, immediate, and proximate harm. Even viewed in a light most favorable to the Plaintiffs, the Complaint does not allege that the Defendants created any specific danger to the Plaintiffs or their interests.

Further, even assuming some interest of the Plaintiffs was at risk, Plaintiffs are required to show that the Defendants' conduct would shock the conscience. This standard has not been precisely defined, but it is necessarily a high one, as the Supreme Court has specifically admonished that substantive due process violations require more than an ordinary tort. In *Collins v. City of Harker Heights*, the Court warned that "[t]he Due Process Clause is not a guarantee against incorrect or ill-advised [government] decisions." 503 U.S. 115, 128-29 (1992) (citing *Bishop v. Wood*, 426 U.S. 341, 350 (1976)). Further, it has been recognized that a "conscience

shocking" activity or inaction "must be predicated on a state action manifesting . . . either: (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995). This intent has been defined as when a defendant was aware of an obvious risk that it was "highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *Id.* at 574 (citing *Medina v. City and County of Denver*, 960 F.2d 1493, 1496 (10th Cir. 1992)).

Even viewed in a light most favorable to the Plaintiffs, I cannot conclude that the Defendants' conduct was so egregious as to "shock the conscience." The Complaint does not allege that the Defendants intended harm to the Plaintiffs or intended to place the Plaintiffs unreasonably at a risk of harm, nor can I so conclude. As tragic as the suicide was, there was no violation of an underlying constitutional right of the Plaintiffs and there can be no cause of action under § 1983. Accordingly, Plaintiffs' substantive due process claims based on the theory of danger creation should be dismissed.

### B. Violation of Parental Rights

The Ruampants also assert claims for a violation of parental rights, citing general language about the importance of parents' "liberty interest in the care, custody, and control of their children." Pls.' Opp'n Br. at 12 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). These claims also derive from substantive due process principles, and for similar reasons must be dismissed.

The Ruampants' "parental rights" claim is a variant of a claim for the right to

6

familial association.  The First Circuit has developed a useful framework for analyzing such claims by dividing them into two categories.  *See, e.g., Manarite v. City of Springfield*, 957 F.2d 953, 960 (1st Cir. 1992) (citing *Ortiz v. Burgos*, 807 F.2d 6, 8 (1st Cir. 1986)).  The first is a right to be free of "governmental interference in certain particularly private family decisions."  *Id.* (citing as examples *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925); *Moore v. City of E. Cleveland*, 431 U.S. 494 (1977)).  The second is a right to "procedural protections whenever the state seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest."  *Id.* (citing as examples *Santosky v. Kramer*, 455 U.S. 745 (1982); *Little v. Streater*, 452 U.S. 1 (1981); *Stanley v. Illinois*, 405 U.S. 645 (1972)).

It is questionable that the Ruampants' parental rights claim falls under either of these categories.  Defendants' actions do not appear to interfere with the Ruampants' "right to choose how to conduct [their] family affairs."  Nor were they aimed at "severing or affecting the parent-child relationship."  *Id.*  As noted in *Manarite*, "[s]tate action that affects the parental relationship only incidentally . . . is not sufficient to establish a violation of a [sic] identified liberty interest."  *Id.* (state's failure to prevent father's suicide did not violate daughter's rights of familial association).  Further, it is well-established in the Tenth Circuit that to sustain a parental rights claim, plaintiffs must allege an "intent to interfere with [the parent-child] relationship."  *Trujillo v. Bd. of County Comm'rs of County of Santa Fe*, 768 F.2d 1186 (10th Cir. 1985); *J.B. v. Washington County*, 127 F.3d 919 (10th Cir. 1997).  *See also Helleloid v. Indep. Sch.*

*Dist. No. 361*, 149 F.Supp. 2d 863, 873-78 (D. Minn. 2001) (school's failure to notify parents about abuse by child's teacher does not amount to a violation of familial association).

Again the Complaint does not allege any intent on the part of the Defendants to interfere with the Ruampants' relationship with their son, thus they have not stated a claim for a familial liberty interest.[3]  As there was no violation of an underlying constitutional right, there can be no cause of action under § 1983.  Accordingly, Plaintiffs' substantive due process claim based on a violation of parental rights should be dismissed.

2. Attorney Fees

As to Defendants' claim for attorney fees, the Colorado statute they have cited does not apply to claims under § 1983; instead attorney fees for dismissal of a § 1983 claim are governed by 42 U.S.C. § 1988(b).  *Berg v. Shapiro*, 36 P.3d 109, 113 (Colo. App. 2001).  Section 1988(b) authorizes an award of fees only if the claim is properly characterized as "vexatious, frivolous, or . . . brought to harass or embarrass the defendant."  *State v. Golden's Concrete Co.*, 962 P.2d 919, 926  (Colo. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 n. 2 (1983) (citing H.R. Rep. No. 94-1558, at 7 (1976))).  I cannot conclude that Plaintiffs' § 1983 claims were entirely without merit as this standard requires.  Accordingly,  I do not grant Defendants attorney fees incurred

---

[3] I also note that the United State Supreme Court has held that "the Due Process clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life liberty, or property."  *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Even when viewed in a light most favorable to the Plaintiffs, the Defendants' conduct seems to at worst to be negligent; it is not intended to interfere with the familial relationship.

8

in defense of the § 1983 claims.

3. State Law Claims

The dismissal of the constitutional claim leaves no pending claim over which I have original jurisdiction and comity requires that I defer to the state courts to resolve the state law claims. The justification for supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a super-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996) (citations omitted). Therefore, I decline to exercise supplemental jurisdiction over the state law claims asserted against the remaining defendants.

Accordingly, it is ordered:

1. The motion to dismiss (Docket No. 13), filed June 15, 2006 is granted in part. Plaintiffs' claims based on 42 U.S.C. § 1983 are dismissed.

2. Defendants' request for attorneys' fees in defense of the § 1983 claims is denied.

3.  The remaining claims in this case are remanded to the Adams County, Colorado District Court.

DATED at Denver, Colorado, on March 8, 2007.

                                      BY THE COURT:

                                      s/ Walker D. Miller
                                      United States District Judge